NARTEN *v.* CURRY, REGISTRAR, BUREAU OF MOTOR VEHICLES.

(No. SU 72-115—Decided September 14, 1972.)

Shaker Heights Municipal Court.

*Mr. John T. Jaeger,* for plaintiff.
*Mr. James Alexander,* for defendant.

ROCKER, J.   The petitioner was arrested for and charged with the offense of operating a motor vehicle while under the influence of alcohol.   He was taken to the headquarters of the Geauga County Sheriff's Department and there requested to submit to a "breathalyzer" test for intoxication.

Petitioner requested permission to consult his attorney before taking any test or making any statement with regard to it.   For almost one hour the arresting officers and others at the station house tried to persuade petitioner to take the test and then call his lawyer.

Finally, petitioner was permitted to call his attorney, who advised him to submit to the test.   He then requested that the test be administered.   The officers refused to permit the test to be given and he is before this court petitioning the court to restrain the registrar of motor vehicles from suspending his right to operate a motor vehicle for

six months for failure to submit to the alcohol tests as prescribed by R. C. 4511.191.

The aforementioned section provides, among other things, that a chemical test may be taken within two hours of the time of arrest of a person charged with driving under the influence of alcohol.

This court is mindful of the decision of *In re Brooks*, 27 Ohio St. 2d 66, wherein the court held that the two hour limitation controlled only the admissibility of the test result and did not entitle the person charged the right to determine at what point in the two hour period he or she would submit to the test.

The fact situation in the instant case differs considerably from that in the *Brooks* case; the considerable difference being the fact that petitioner sought advice of counsel before either submitting or refusing the test within the two hour period of admissibility standard.

This court must be mindful, too, of the recent decision of the Supreme Court of the United States, *Argersinger* v. *Hamlin*, 92 Supreme Court Reporter 2006, wherein the court held that an indigent defendant had the right of counsel furnished to him in any case in which the penalty included imprisonment. It is unnecessary to belabor the point that, certainly, one who can afford counsel is not to be denied that right.

Driving a motor vehicle while under the influence of alcohol is a most serious offense and under the Revised Code of Ohio conviction of the offense carries with it a mandatory jail sentence of not less than three days, the *Argersinger* decision is, therefore, clearly applicable.

Prior to *Argersinger* the Supreme Court of the United States held that a person charged with a crime "requires the guiding hand of counsel at every step in the proceedings against him." *Powell* v. *Alabama*, 287 U. S. 68. This has been interpreted many times over as including such stages of criminal prosecution as the "lineup" and other preliminary steps leading to further conduct against the defendant.

As reprehensible as operating a motor vehicle under

the influence may be, surely a person accused of such an offense is entitled to the right of counsel equally with a murderer, rapist, armed robber or other perpetrator of a criminal act.

This court, unlike the appellate courts of the state, comes in almost daily contact directly with persons and victims involved in drunken driving incidents. It is quite frustrating to all judges to observe the fact that with the harsh punishments, the "implied consent laws" and other measures, the offenses of driving while intoxicated continue to rise.

Disturbing though it is, this court does not believe that resort should be countenanced to deprivation of constitutional rights.

It is the holding of this court, therefore, that where a delay in taking of a test for intoxication is occasioned on the ground that the person charged desires to consult counsel, and after such consultation, agrees to submit to such test, such conduct does not constitute a refusal under R. C. 4511.191.

It should be noted that the chemical test is not the sole means of establishing evidence of intoxication. It is an effective means leading to a *prima facie* case, but successful prosecution can result and does often result without it. Enforcement of all criminal laws would be made easier by use of totalitarian-type of inquiry such as compulsory injection of truth serum, lie-detectors and the similar devices of that nature. The conception of justice in this nation has never included such practices as being acceptable even though some practical benefits might accrue.

The petition is granted upon finding that petitioner did not refuse to submit to a chemical test; no suspension shall be imposed.