SIEGWALD, APPELLEE, *v.* CURRY, REGISTRAR, BUREAU OF
MOTOR VEHICLES, APPELLANT.

[Cite as Siegwald v. Curry (1974), 40 Ohio App. 2d 313.]

(No. 73AP-457—Decided April 23, 1974.)

*Messrs. Tyack, Scott & Colley,* for appellee.

*Mr. George C. Smith,* prosecuting attorney, *Mr. Miles
C. Durfey, Mr. Stephen M. Miller* and *Mr. Ronald J.
O'Brien,* legal intern, for appellant.

WHITESIDE, J. This is an appeal from a judgment of the Franklin County Municipal Court (39 Ohio Misc. 16), which refused to impose the suspension provided by R. C. 4511.191 for a refusal to take a chemical test. It predicated its decision upon the finding by the trial court that the plaintiff did not refuse to take the test, but merely requested that she be permitted to exercise her statutory right to telephone her attorney prior to taking the test.

The defendant Registrar appeals and raises a single assignment of error as follows:

"The trial court committed reversible error by holding that a person who is arrested for operating a motor vehicle while under the influence of alcohol has the right to call an attorney before submitting to a chemical test required by section 4511.191 of the Revised Code, and a refusal conditioned on the right to call an attorney is not a refusal under the Ohio implied consent statute."

The express finding of the trial court was as follows:

"* * * where a short and reasonable delay is occasioned in the taking of a test for intoxication on the ground that the person charged with operating a motor vehicle while under the influence of alcohol desires to call his or her attorney, such request followed by a denial by the arresting officer to let the accused use the telephone, does not constitute a refusal under Section 4511.191 F of the Ohio Revised Code. * * *"

This court has considered related issues on several occasions and has consistently held that a refusal by a police officer to permit a person arrested for driving a motor vehicle while under the influence of alcohol to consult with his attorney, prior to submitting to the chemical test required by R. C. 4511.191, does not constitute an unconstitutional denial of the right to counsel. See our unreported decisions rendered in: *O'Brien* v. *Curry, Registrar*, Court of Appeals for Franklin County, No. 73AP-423, decided March 19, 1974 (1974 unreported Decisions, page 679); *Uveges* v. *Curry, Registrar*, Court of Appeals for Franklin County, No. 73 AP-395, decided March 5, 1974 (1974 unreported Decisions, page 509); *Ranbarger* v. *Curry, Regis-*

*trar,* Court of Appeals for Franklin County, No. 73 AP-130, decided August 28, 1973 (1973 Unreported Decisions, page 2489); *Calvert* v. *Rice, Registrar,* Court of Appeals for Franklin County, No. 9698, decided May 5, 1970 (1970 Unreported Decisions, page 938); and *Osborne* v. *Bureau* of *Motor Vehicles,* Court of Appeals for Franklin County, No. 9633, decided April 7, 1970 (1970 Unreported Decisions, page 641).

There is one important distinction between this case and the five above cited unreported decisions. In each of the above, the trial court found that the plaintiff had refused to submit to a chemical test when requested by the police officer. In each case, there was a basis for the conclusion of the trial court that the request for counsel constituted a refusal. In *O'Brien,* for example the plaintiff was requested to take the test three times and refused each time. Only on the third refusal did he ask to talk to an attorney. In *Osborne,* this court expressly stated that the request to consult counsel "amounted to nothing more than a pretense and a subterfuge." In this case, however, the trial court has expressly found that there was no refusal to take a chemical test, but merely a request by the plaintiff to telephone her attorney prior to taking the test. Even though the evidence might have supported a finding that there had been a refusal, the trial court factually found no refusal. As in the above-cited cases, we must uphold a factual finding by the trial court when it is supported by the evidence.

There is some implication in *Osborne* and *Calvert* that there is no right to counsel in civil proceedings. That implication must be modified. There is an inherent right to counsel as to all matters, be it civil or criminal. In criminal matters, however, both the Ohio and the United States Consitutions expressly provide that a person shall not be denied this right to counsel. In criminal matters, it must frequently and affirmatively appear that the right to counsel has been afforded to a defendant, and, if it does not so appear, a denial of counsel is presumed. In civil matters, however, there is no error with respect to a denial of coun-

sel, unless it appears that the party expressly requested the right to confer with counsel and was unjustifiably denied the exercise of that right. The right is not absolute, but may be controlled as to time and circumstances. However, there exists a right to counsel in civil matters. Another distinction is that in criminal matters a denial of counsel is usually *per se* prejudicial. In civil matters, however, a denial of the right to counsel must be shown to have been prejudicial.

In the cases cited above, the issue was whether the request, of one arrested for driving a motor vehicle while under the influence of alcohol, to see an attorney, in and of itself kept this failure to take a chemical test, required by R. C. 4511.191, from constituting a refusal within the contemplation of the statute. We concluded in each of those cases that the trial court properly found that there had been a refusal and no denial of any constitutional right.

In this case, however, the defendant contends that a request to telephone counsel prior to submitting to the chemical test, pursuant to R. C. 4511.191, in and of itself constitutes a refusal to submit to a chemical test pursuant to such section. We, likewise, hold that it does not. Whether or not a person has refused to take the chemical test is one of the issues to be determined by the trial court, pursuant to R. C. 4511.191(F).

Although the proceedings relative to the suspension of driving rights, for a failure to take a chemical test, and a prosecution for driving while under the influence are separate and distinct proceedings, the former being civil and the latter criminal, it is difficult to distinguish between the two proceedings up until there is a refusal to take a chemical test. Necessarily, there is some contemporaneous over-lapping. R. C. 4511.191.(A) expressly provides that the principle of implied consent applies only where a person is "arrested for the offense of driving while under the influence of alcohol." Likewise, one of the issues to be determined in the civil proceedings attacking a suspension of driving rights because of a refusal to take a chemical test is posed by R. C. 4511.191 in terms of "whether the person was placed under arrest."

Plaintiff herein raises an issue not discussed in our prior cases; namely, the effect of R. C. 2935.14 and 2935.20. These sections relate to the right of a person arrested to communicate with an attorney.

R. C. 2935.14 provides in part:

"If the person arrested is unable to offer sufficient bail * * * he shall, prior to being confined or removed from the county of arrest, as the case may be, be speedily permitted facilities to communicate with an attorney at law of his own choice, or to communicate with at least one relative or other person for the purpose of obtaining counsel (or in cases of misdemeanors or ordinance violation for the purpose of arranging bail). * * *"

R. C. 2935.14 provides to an accused the right to communicate with an attorney prior to his being confined. However, in 1965, R. C. 2935.20 was enacted and pertains to the right of counsel between the time of arrest and confinement. R. C. 2935.20 reads, in pertinent part, as follows:

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section."

In this case, as often is the situation, there was some conflict of testimony between the police officer and plaintiff. From the officer's testimony, it might be concluded that there was both a refusal to take the test and a request to confer with an attorney. Plaintiff's testimony however, indicates that she told the officer she would take the test if he would let her make a phone call to her attorney first. It

appears that the trial court accepted the testimony of plaintiff and predicated its decision thereon. Since such decision is supported by the evidence, the issue is whether an expression of willingness to take a chemical test, but the insistence upon exercising the statutory right to call an attorney prior to taking the test constitutes a refusal to take a test within the contemplation of R. C. 4511.191, where the delay that would be occasioned by calling the attorney is ''a short and reasonable delay.'' The finding by the trial court that the delay was only short and reasonable is also supported by the evidence. The registrar's certificate and affidavit executed by the officers indicates that only forty minutes elapsed between the time of the violation and time of refusal. The officer testified that they went over the form for a period of approximately twenty to thirty minutes.

In *Atwell* v. *State* (1973), 35 Ohio App. 2d 221, Judge Krenzler states, at page 230 of the decision:

''The police officer must immediately upon arriving at the police station make the required request for the test under R. C. 4511.191(C), and the person shall have a reasonable period of time after the request to decide whether he will take the test or refuse to take the test. What is a reasonable period of time will depend on all the facts and circumstances in each case.

''The police officers are not expected to neglect their other duties and responsibilities and wait indefinitely for the arrested person to decide whether he will take the test or refuse to take the test. All that is required of the police officer is to request that the arrested person take the test and such person has a reasonable period of time in which to make a decision whether to take or refuse to take the test. * * *''

It is not a refusal to take the required test for the arrested person to request the exercise of his statutory right, under R. C. 2935.20, to telephone an attorney during this reasonable time period in which he is determining whether to take the test, so long as the delay occasioned by such communication with the attorney is short and reasonable.

On the other hand, where questions are asked or requests made, including a request to consult an attorney, as a subterfuge to avoid taking a test, there is a refusal within the contemplation of R. C. 4511.191. Basically, whether or not there has been a refusal is a factual determination to be made by the trial court based upon the facts and circumstances of the case.

Although the officer is required to advise the arrested person of the statutory consequences of a refusal to take a chemical test, he is not required to advise the arrested person of the effect on the criminal proceedings of either taking the test or refusing to take the test. It must be remembered that a refusal to take the chemical test may be admissible into evidence upon the issue of whether the arrested person was intoxicated at the time of such refusal. See *Westerville* v. *Cunningham* (1968), 15 Ohio St. 2d 121. The results of such a chemical test, if taken and properly administered, is admissible into evidence. Thus, insofar as the criminal proceedings are concerned, evidence tending to prove that the arrested person was under the influence of alcohol may be obtained both by taking the test and by refusing to take the test.

We see no reason for finding that where a person in good faith, and without undue delay wishes to consult with an attorney in connection with such person's arrest for driving while intoxicated, including advice as to whether or not to take a chemical test, a request to call an attorney constitutes a refusal to take a chemical test. We reiterate that whether or not this is the situation is a factual determination to be made by the trial court predicated upon the evidence of the facts and circumstances of the case.

Other trial courts have concluded that there has been no refusal to take a chemical test where the arrested person has merely requested to consult with counsel prior to submitting to a test. See *Troy* v. *Curry* (1973), 36 Ohio Misc. 144, and *Narten* v. *Curry* (1972), 33 Ohio Misc. 94. On the other hand, at least one trial court, in addition to those instances where we have affirmed trial courts as indicated above, has concluded to the contrary. See *Hunter*

v. *State* (1970), 25 Ohio Misc. 117. In *Dayton* v. *Nugent* (1970), 25 Ohio Misc. 31, the court suppressed evidence of a refusal to submit to a chemical test in a criminal proceeding for driving while under the influence of alcohol because the police officers had refused to permit the person arrested to exercise the right granted in R. C. 2935.20, prior to the accused's determining whether to refuse to submit to the test.

Similarly, the exclusion of the results of a chemical test, taken pursuant to an implied consent statute, in criminal proceedings for the offense of driving while intoxicated, where the defendant, when requested to take the test, indicated he wished to telephone his lawyer, and where there was no danger of delay in taking the test, was the result in the New York case of *People* v. *Gursey* (1968), 22 N. Y. 2d 224, 239 N. E. 2d 351. Earlier, the New York Court of Appeals in *In re the Matter of Finocchairo* v. *Kelly* (1962), 11 N. Y. 2d 58, 181 N. E. 2d 427, had expressly held that driving rights should be revoked pursuant to the implied consent law even though the petitioner's request to telephone his attorney was denied since "the constitutional rights of petitioner were not invaded because of the refusal of his request for counsel." See, also, *In the Matter of Story* v. *Hults* (1967), 19 N. Y. 2d 936, 228 N. E. 2d 398. The Court of Appeals in *Gursey* distinguished both *Story* and *Finocchairo,* partly upon the grounds that only administrative proceedings were involved in those cases and partly upon the factual situations. The Court of Appeals stated, at 228, 229, 239 N. E. 2d 353, relative to the implied consent law:

"By these provisions, defendant had the option to refuse to take the drunkometer test, electing instead to submit to the revocation of his license. * * * Of course, defendant was informed that he would lose his license if he refused to take the police-administered test. Nevertheless, he wished legal counseling concerning his option and refused to submit to the test until his several requests to telephone his lawyer were denied. Granting defendant's request would not have substantially interfered with the investi-

gative procedure, since the telephone call would have been concluded in a matter of minutes. At least, the record here does not indicate otherwise. Consequently, the denial of defendant's requests for an opportunity to telephone his lawyer must be deemed to have violated his privilege of access to counsel. ''* * *.

''The privilege of consulting with counsel concerning the exercise of legal rights, should not, however, extend so far as to palpably impair or nullify the statutory procedure requiring drivers to choose between taking the test or losing their licenses. * * *. Where the defendant wishes only to telephone his lawyer or consult with a lawyer present in the station house or immediately available there, no danger of delay is posed. But, to be sure, there can be no recognition of an absolute right to refuse the test until a lawyer reaches the scene * * *. If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel.''

The apparent New York result from these cases is that where a person, required to submit to a chemical test pursuant to the implied consent law, refuses to do so until he telephones his attorney, such person's driving rights are revoked even though the right to telephone the attorney is denied by the police. However, if, instead of refusing to submit to the test when denied the right to telephone his attorney, he submits to the test, the results of the test are not admissible into evidence against him. We cannot agree that such is, or should be, the law of Ohio. Such a rule would encourage persons arrested for driving while intoxicated to immediately request the right to call an attorney, and, when denied the right to do so by the police, as the cases indicate appears to be the custom, to submit to the test, and have the results thereof suppressed upon trial, thereby substantially lessening the chances of conviction.

Most courts in other jurisdictions that have considered the issue have held that a refusal to submit to a chemical

test without first consulting with a lawyer constitutes a refusal to submit to the test under the implied consent law. *Blow* v. *Commissioner of Motor Vehicles* (1969), 83 S. D. 628, 164 N. W. 2d 351; *Pickard* v. *Director of Motor Vehicles* (1969), 184 Neb. 13, 165 N. W. 2d 96; *Rusho* v. *Johns* (1970), 186 Neb. 131, 181 N. W. 2d 448; *Stratikos* v. *Oregon, Department of Motor Vehicles* (1970), 4 Ore. App. 313, 477 P. 2d 237; *Deaner* v. *Commonwealth* (1969), 210 Va. 285, 170 S. E. 2d 199. Most of these cases are distinguishable from the one herein. In *Deaner*, a Virginia case, there appears to have been no refusal to permit the arrested person to consult his attorney, but he appears to have been unable to do so until some three hours after his arrest. That case dealt with whether or not a constitutional right to counsel was involved. In *Stratikos*, an Oregon case, the court relied upon a line of California cases and cited the *Gursey* case, *supra*, as supporting its position. Furthermore, the court commented that, under Oregon law, unlike Ohio law, the refusal to take the test would not be admissible in any criminal action. Furthermore, that case represents not an effort to contact an attorney, but an insistence that his attorney be present during the test.

Both *Pickard* and *Rusho* are Nebraska cases. In *Pickard*, the Supreme Court of Nebraska stated, at page 16, 181 N. W. 2d 98:

"In an appropriate factual context, a request for a brief delay in making the decision to accept or refuse the chemical test in order to consult with a lawyer should be granted where the delay is short and does not jeopardize the effectiveness of the test. However, a refusal to take a chemical test does not disappear or become something else because of a later request to consult with a lawyer. The taking of a chemical test authorized by the Implied Consent Law is not ordinarily required to be delayed by a request of the arrested motorist that he be permitted to contact legal counsel. See *State* v. *Oleson*, 180 Neb. 546, 143 N. W. 2d 917."

In *Rusho*, however, the Nebraska Supreme Court appears to have repudiated this language, although there is no express reference thereto. In *Blow*, a South Dakota case,

the court expressly held that a request to speak to counsel, made by the accused at the time he is asked to submit to a chemical test, constitutes a refusal to take the test because to hold otherwise "would in our opinion emasculate the implied consent law and make it practically noneffective." We disagree with the latter comment of the South Dakota Court. To allow a person to attempt to call his attorney and obtain advice from him would in no way emasculate the implied consent law and make it practically noneffective. On the contrary, there would probably be fewer refusals to take tests if the advice of an attorney were secured prior to refusal.

It is difficult to envisage a circumstance where a competent attorney would advise a client to refuse to take the chemical test and suffer the consequences of a six months' suspension of his driving rights, and the use of such refusal against him at trial. In many, if not most, instances, the punishment imposed following a conviction for driving while under the influence of alcohol would be less onerous than the six months' suspension of driving rights imposed for a refusal to take the chemical test. And, of course, a refusal to take the test is no assurance that there will not be a conviction for driving while under the influence of alcohol because there is often sufficient evidence, plus the inferences that may be made from the fact of refusing to take the test, to support a conviction for driving while under the influence of alcohol, even where there is a refusal to take the test.

In none of the cases from other jurisdictions does it appear that there were statutes similar to R. C. 2935.14 and 2935.20. In *State* v. *Jones* (1974), 37 Ohio St. 2d 21, in a footnote at page 24 of the opinion, it is stated that "* * * these statutes provide a right beyond those guaranteed by the federal Constitution." The footnote further comments as follows:

"* * * Although we base our decision here on broader, constitutional grounds, we wish to state that the mandate of both R. C. 2935.14 and 2935.20 is clear, and deviation therefrom should not be countenanced."

Ohio law further affords to witnesses the right to be

accompanied, represented, and advised by an attorney in any administrative or executive proceeding or investigation. See R. C. 9.84.

Ohio statutes afford a greater right to consult with an attorney than either the Ohio or federal constitutions. We find no error in a finding by a trial court that a good-faith request of an arrested person to exercise his statutory right pursuant to R. C. 2935.20 to call an attorney, before submitting to a chemical test required by R. C. 4511.191, does not constitute a refusal to take such test, where the delay occasioned by the exercise of that statutory right will not unduly or unreasonably delay the administering of the test. Whether or not the request to consult the attorney is made in good faith and whether the exercise of the right will unreasonably delay administering the test are factual issues to be determined from the facts and circumstances of each case.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

TROOP, P. J., and REILLY, J., concur.