TERRY L. WISEMAN, APPELLANT, V. JOHN L. SULLIVAN, DIRECTOR OF THE DEPARTMENT OF MOTOR VEHICLES OF THE STATE OF NEBRASKA, APPELLEE.

211 N. W. 2d 906

Filed November 9, 1973.   No. 38998.

George H. Moyer, Jr., and Moyer & Moyer, for appellant.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.:

This is an appeal from an order of the Director of the

Department of Motor Vehicles made under the provisions of section 39-727.16 et seq., R. S. Supp., 1972, revoking the motor vehicle operator's license of the plaintiff for an alleged refusal of the plaintiff to take a chemical test of his breath under the provisions of section 39-727.03 (4), R. S. Supp., 1972. The District Court on appeal upheld the order and the plaintiff appealed to this court. We reverse.

The question here is whether the evidence supports the conclusion that there was a refusal, and if there was, the reasonableness or unreasonableness of the refusal. § 39-727.17, R. S. Supp., 1972. On appeal from an order of revocation of a motor vehicle operator's license under the implied consent law, we review the findings of the trial court de novo as in equity. § 39-727.19, R. S. Supp., 1972; § 60-420, R. R. S. 1943; Zadina v. Weedlun, 187 Neb. 361, 190 N. W. 2d 857.

There is no significant conflict in the evidence. On September 8, 1972, at about 1:20 a.m., the plaintiff was arrested by an officer of the Grand Island police department for operating a motor vehicle on a public street while under the influence of intoxicating liquor. A few minutes later at the police station the officer asked plaintiff if he would submit to a test of his breath upon a device termed a breathalyzer and further advised the plaintiff that if he refused to take the test he would lose his driver's license for 1 year. The plaintiff immediately consented to take the test. He was then permitted to make three telephone calls; two in unsuccessful attempts to secure legal counsel and one in an attempt to arrange bond. All were unsuccessful. This consumed 30 to 45 minutes. The officer then read to the plaintiff certain "warnings'" which were embodied in a written instrument, a copy of which was received in evidence in the District Court. This document had been prepared by the legal staff of the city of Grand Island. These warnings included a statement of the reason why the plaintiff was under arrest. Then fol-

lowed Miranda type warnings which included the following: "You have the right to consult with or obtain an attorney and have him present with you during the questioning or *any part of my investigation.* Do you understand that? Do you willingly waive your right to remain silent and your right to have an attorney present with you, or the right to consult with an attorney at this time?" (Emphasis supplied.)

Following the warnings the instrument gives accurate information concerning the implied consent statute which included an accurate statement concerning the consequences of refusal to give the specimen and concluded with the following: "Is there an attorney or attorneys whom you wish to contact at this time? . . . Having been advised of your rights, and knowing the same, do you willingly and voluntarily, and without any threat or promise, consent to giving a test at my direction?"

The plaintiff was then taken to the breathalyzer room where he refused to take a test, stating that he wanted to consult with an attorney. The test was not made and the plaintiff was placed in a cell. At this time the plaintiff had been at the station approximately 1 hour. At that point he talked to a companion who had been in the automobile with him at the time of his arrest. The companion then left, made a telephone call, and returned in about 15 minutes at which time the plaintiff informed the police that he wished to give the sample. His offer was refused because too much time had elapsed.

The inherent contradictions between the questions contained in the warnings and the legal obligation of the plaintiff under the rules applicable to the implied consent statute are evident. However, at no place in the "warnings" is it made clear that the right to counsel and the right against self-incrimination have no application whatever under the implied consent statute. Neither is there any requirement under our decided cases that Miranda type warnings be given before a sample is requested. Neither is there any requirement

that consent to the test be given voluntarily or understandingly. The loss of the operator's license is itself a statutorily authorized and constitutional threat or inducement to give the requested specimen. The statute does, of course, direct that if there is a refusal the test not be given, but this simply forestalls a forcible taking of the specimen. § 39-727.16, R. S. Supp., 1972.

Wiseman affirmatively testified that his interim refusal to take the test was brought about by his understanding from the warnings that he had a right to have a lawyer present and to consult with him before he was required to give the sample. From an examination of these warnings we conclude that only a person trained in the law and one familiar with the Miranda doctrine and with the implied consent statute could reasonably understand from the "warnings" that he had no right to consult with counsel concerning the tests. At the very best, the commingling of the Miranda warnings and the implied consent statute resulted in a high degree of ambiguity. This is especially evident when we consider the advice, much broader than Miranda requires, that plaintiff had a right to counsel "during any part of my investigation." Any person might properly interpret this as including the taking of specimens. He might even properly interpret the admonition on the right to remain silent as giving him the right to refuse to respond to the request for a specimen. Such a refusal would itself subject him to the penalties of the statute.

We have stated many times that a driver who has been arrested for operating a motor vehicle upon a public street or highway while under the influence of intoxicating liquor is not entitled under either the federal or state Constitutions or the implied consent statute to consult with a lawyer previous to giving a sample of blood, breath, or urine under the implied consent act, or to have a lawyer present during the giving of the sample. Rusho v. Johns, 186 Neb. 131, 181 N. W. 2d 448; Metschke v. Department of Motor Vehicles, 186 Neb. 197, 181 N.

W. 2d 843; Doran v. Johns, 186 Neb. 321, 182 N. W. 2d 900. Neither is the right against self-incrimination involved. State v. Manley, 189 Neb. 415, 202 N. W. 2d 831. · We have also said that a conditional or qualified refusal to take one of the authorized tests to determine the alcoholic content of body fluids under the implied consent law is not sanctioned by the act and such a refusal is a refusal to submit to the test within the meaning of the act. Preston v. Johns, 186 Neb. 14, 180 N. W. 2d 135; Rusho v. Johns, *supra*.

In this case, however, it clearly appears and we find that the conditional refusal which occurred between the first and subsequent unqualified consents to take the test was induced by the ambiguous warnings given. In accordance with a holding of the Supreme Court of Minnesota in State, Department of Highways v. Beckey, 291 Minn. 483, 192 N. W. 2d 441,* in a substantially similar situation, we hold: If a Miranda type warning is given in connection with information concerning the implied consent statute, it is incumbent upon the arresting officer to explicitly inform the arrested person that the constitutional rights to counsel and against self-incrimination which may have been previously explained are not applicable to the decision the driver must make concerning the giving of samples, that he has no right to consult with an attorney before making that decision, and that the right against self-incrimination does not permit the driver to refuse to make an answer to the request for such samples.

Where, as here, it appears from the evidence that a request to see an attorney before giving a sample under

---

* See, also, Goodman v. Orr, 19 Cal. App. 3d 845, 97 Cal. Rptr. 226; Rees v. Department of Motor Vehicles, 8 Cal. App. 3d 746, 87 Cal. Rptr. 456; Maxsted v. Department of Motor Vehicles, 14 Cal. App. 3d 982, 92 Cal. Rptr. 579; Thomas v. Schaffner (Mo. App.), 448 S. W. 2d 319.

the implied consent law was induced by confusion resulting from the commingling of the Miranda type warnings with information concerning the demands of the implied consent statute, such request for an attorney does not constitute a refusal under the implied consent statute. Since the questions which are raised might arise under varying circumstances not as clear-cut as the present instance, we suggest that the Director and trial courts reviewing the action of the Director hereafter make specific findings as to whether such qualified refusals were the result of or were induced by ambiguous procedures such as were here involved.

It is possible that a passing statement made by this court in Pickard v. Director of Motor Vehicles, 184 Neb. 13, 165 N. W. 2d 96, may have or will engender confusion. The statement in that case countenancing a delay in some undefined circumstances to give a driver an opportunity to consult with a lawyer before giving a sample under the implied consent statute is disapproved.

What is said in this opinion should not be taken to suggest that the police may in any way interfere with a suspect's right to counsel in connection with any charge of crime which may be related to the driving while intoxicated investigation as, for example, to drunk driving itself or motor vehicle homicide. As to these, of course, the ordinary rules pertaining to right to counsel apply. We simply say such right does not apply to the taking of samples under the implied consent statute.

The judgment of the trial court and the order of the Director of the Department of Motor Vehicles are reversed and the cause remanded for further action not inconsistent with this opinion.

REVERSED AND REMANDED.